```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HOWARD GISSINGER et al.,
                        Plaintiffs,                          REPORT AND
                                                             RECOMMENDATION
        - against -
                                                             CV 04-0534 (CBA) (JO)
PAO YUNG,
                        Defendant.
----------------------------------------------------------X
----------------------------------------------------------X
HOWARD GISSINGER et al.,
                        Plaintiffs,

        - against -
                                                             CV 04-5406 (CBA) (JO)
NEW PAO YUNG
ENTERPRISES CO., LTD.,
                        Defendant.
----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

In these two related actions, plaintiffs Howard Gissinger and Esther Gissinger (together, "the Gissingers") seek to recover damages arising from the severe injuries that Mr. Gissinger claims to have sustained after he fell from a ladder. The defendants in these cases (to whom I refer collectively as "Yung") are Pao Yung, a corporate entity that the Gissingers claim was responsible for the defective design and manufacture of the ladder from which Mr. Gissinger fell, and its successor in interest, New Pao Yung Enterprises Co., Ltd. In each case, the defendant has filed an answer but has done nothing since to comply with its discovery obligations. As a result, the Gissingers now seek an order pursuant to subsections (b)(2)(B) and (d) of Federal Rule of Civil Procedure 37, striking Yung's answers or entering a default judgment against the defendant in each case. For the reasons set forth below, I respectfully recommend that the court strike Yung's answers.

I. Background

The instant suits are two of three related actions currently before this court concerning the design and manufacture of the ladder from which Howard Gissinger fell on December 16, 2001. *See* docket entry ("DE") 1 ¶ 30. The Gissingers filed the first of the three in New York state court against defendants Collins International, Co., Ltd. and Collins Company Limited, Taiwan (collectively, "Collins"), the alleged distributor of the ladder at issue. *See* CV 03-1963 (CBA), DE 1 at 6-7. Collins removed that case to this court by notice of removal dated April 23, 2003. *Id.* at 1-2. Their second lawsuit, filed on February 9, 2004, named Pao Yung as a defendant based on an allegation that that company was responsible for the ladder's design and manufacture. *See* CV 04-0534 ("*Yung I*"), DE 1. The Gissingers filed the third lawsuit on December 13, 2004, against Pao Yung's successor in interest, New Pao Yung Enterprise Co., Ltd. *See* CV 04-5406 ("*Yung II*") DE 1. After substantial delays occasioned by the difficulty of locating the foreign defendants, the Gissingers effected personal service on Yung's statutory representative on January 13, 2005. *See Yung I*, DE 6 at 2; *Yung II*, DE 2 at 2. The Gissingers report that Yung timely served an answer in each of the respective cases on February 24, 2005. Although these submissions do not appear on the docket sheet of either case, the receipt of a responsive pleading is noted on the docket sheet of *Yung I* (DE 7), and the Gissingers included copies of Yung's answers with their submissions in connection with the instant motion. *Yung I*, DE 12, Ex. D; *Yung II*, DE 7, Ex. D. I therefore conclude that Yung timely served an answer to each complaint.

Those answers represent the entirety of Yung's participation in these cases. In contravention of several court orders, Yung has failed to make the initial disclosures required by

2

Federal Rule of Civil Procedure 26(a), has ignored the Gissinger's discovery requests and made no requests of its own, and has failed to appear as required at the three status conferences that were scheduled after the answers were served. At the first of these conferences, on March 10, 2005, Magistrate Judge Matsumoto entered an order directing Yung to make its Rule 26(a) disclosures by March 25, 2005, and directing all parties to propound written discovery requests by the same date. At the second conference, the Gissingers reported that an investigator they had hired to locate Yung had discovered that Yung had left Taiwan and its whereabout were unknown. At the third status conference held on June 3, 2005, the Gissingers moved for an order to compel Yung to provide responses to the plaintiffs' discovery requests. Judge Matsumoto directed the Gissingers to serve Yung with their discovery requests and motion papers by UPS International and to file delivery receipts with the court, and granted Yung 30 days from delivery of these submission to respond to them. The Gissingers subsequently reported that UPS International had been unable to deliver the discovery and motion papers since Yung had left its last known address without providing a forwarding address. *See Yung I*, DE 10; *Yung II*, DE 5.

Thereafter, Judge Matsumoto granted the Gissingers leave to file a motion to compel discovery and impose sanctions including a judgment of default pursuant to Fed. R. Civ. P. 37. The Gissingers filed a motion to that effect on August 9, 2005, seeking an order compelling Yung to respond to outstanding discovery requests within 30 days and further requesting that in the event that Yung failed to do so, the court strike Yung's answers in both cases or, alternatively, enter default judgments against it. *Yung I,* DE 12; *Yung II,* DE 7. Yung never responded to or opposed the Gissingers' motion. Accordingly, on February 7, 2006, Judge Motsumoto granted the Gissingers' motion to compel and ordered Yung to respond to the Gissingers' discovery

3

demands by March 24, 2006. *Yung I*, DE 14-15; *Yung II*, DE 9 ("the February Order"). Judge Matsumoto expressly warned Yung that failure to comply with her order could result in a recommendation that the district court strike the answers in the two cases or enter default judgments. Judge Matsumoto also ordered the Gissingers to serve a copy of the February Order on Yung at its last known address in Taiwan, to file affidavits of service by February 17, 2006, and to advise the court by April 3, 2006, whether Yung had complied with the February Order. Finally, Judge Matsumoto noted that should Yung fail to comply with the February Order, the Gissingers could renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Id.*

The Gissingers filed affidavits of service of the February Order on February 16, 2006. *Yung I*, DE 16-17; *Yung II*, DE 10. On April 3, 2006 (by which time the cases had been reassigned to me for pretrial supervision), the Gissingers reported that Yung had failed to comply with the February Order and advised me that they intended to renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Yung I*, DE 18; *Yung II*, DE 11.

II.  Discussion

Rule 37 empowers a court to sanction a party for failure to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2), (d). The rule identifies a range of permissible sanctions from the modest relief of requiring the recalcitrant party to reimburse its adversary for the expenses incurred in vindicating its discovery rights, to more severe steps such as precluding evidence or deeming disputed matters to be resolved adversely to the noncompliant party, to the harshest sanctions, which the Gissingers now seek, of striking an answer and entering judgment against

the offending party.  Fed. R. Civ. P. 37(b)(2); *Cine Forty-Second Street Theatre Corp., v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

The Second Circuit has repeatedly affirmed its "belief in the importance of appropriate sanctions as a necessary means of dealing with a recusant party." *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citing *Cine*, 602 F.2d at 1063-1064).  Although the district court has broad discretion in choosing an appropriate sanction, it should reserve the most severe punishments for the "rare" cases in which "they are necessary to achieve the purpose of Rule 37 as a credible deterrent." *Id.*  In general, a drastic sanction is only warranted if the noncompliance has been "willful, or in bad faith, or otherwise culpable." *See Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)).  Among the factors the court should consider in selecting an appropriate sanction are the extent and duration of the noncompliance, the culpability of the noncompliant party, the adequacy of notice, and the efficacy of lesser sanctions. *See Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852 (2d Cir. 1995).

Here, Yung has completely failed to participate in discovery for well over a year.  No attorney has ever filed a notice of appearance on Yung's behalf and Yung has not otherwise indicated any willingness to participate in the litigation of the instant claims.  The Gissingers have served Yung at its last known address with discovery orders dating back to March 10, 2005, its motion papers with respect to its prior motion to compel and the instant motion, and Judge Matsumoto's orders, including the February Order in which she expressly warned Yung of the possibility of a harsh sanction for its noncompliance with discovery orders.  *See Yung I*, DE 13,
5

DE 16; *Yung II*, DE 8, DE 10. Yung never responded to the Gissingers' motions or to Judge Matsumoto's orders. Yung may or may not have actually received these filings since it apparently left Taiwan after filing answers. For present purposes, it suffices that Yung was aware of the pendency of these actions and that all of the relevant court orders and motion papers were forwarded to Yung at its last known address. *See Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, 2004 WL 2029908, *1-*3 (S.D.N.Y. Sep. 13, 2004) (granting plaintiff's motion for a default judgment after discovery demands served by mail at the defendant's last known address were returned to plaintiff as "undeliverable"). Under the circumstances, Yung's persistent lack of participation in these actions can only be described as willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. M. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (citations and quotations omitted). Yung's disappearance was not a factor beyond its control and cannot shield it from the consequences of its failure to participate in the instant suit. *See Ann Taylor,* 2004 WL 2029908 at *1-*3.

The Gissingers expended considerable resources in locating Yung, including retaining the services of a private investigator in Taiwan, and I conclude that they have done all that could be expected of them to locate the defendants. *Cf. Welch v. Alexis,* 2004 WL 1920810 (E.D.N.Y. May 26, 2004) (declining to strike defendants' answer as a Rule 37 sanction where the plaintiffs had not hired an investigator and had taken only meager steps to locate the defendants). Given the difficulty of locating Yung at this time and the strong likelihood that further orders would be as futile as those previously issued, I recommend that the court strike Yung's answers in both

cases. *See The Original San Francisco Toymakers, Inc. v. Trendmasters, Inc.,* 2003 WL 22384771 (N.D. Cal. Oct. 7, 2003) ("The repeated failure of Defendant to attend hearings, the inability of its former defense counsel to serve papers upon it, and the undelivered mail returned to the Court, all inspire little confidence that Defendant's failure to form a defense is due to excusable neglect or that a sanction less than default judgment will have any effect.").

As an alternative or additional form of relief, the Gissingers have requested that the court enter a judgment of default against Yung in each case. At this juncture, a default judgment is premature since the Gissingers' submission is silent with regard to such crucial factors as the amount of money involved and the severity that such a judgment would impose on the defendants. *See Ann Taylor,* 2004 WL 2029908, *2-3. Should the court adopt the recommendation made herein to strike Yung's answers, the Clerk should enter a notation of default against Yung in each case. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ... the clerk shall enter the party's default."). Thereafter, the Gissingers would be free to move for a default judgment pursuant to and in accordance with Fed. R. Civ. P. 55(b)(2).

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court strike Yung's answers.

IV.     Objections

The Gissingers are directed to serve a copy of this Report and Recommendation on Yung by UPS International, and to file proof of service with the court by April 28, 2006. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a

courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

      **SO ORDERED.**

Dated: Brooklyn, New York
       April 21, 2006

                                                /s/ James Orenstein
                                                JAMES ORENSTEIN
                                                U.S. Magistrate Judge